IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:01-CR-141-1-BO[1]

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DONALD MARLOWE JEFFERS. | ) | |

On March 16, 2011, a status conference and competency hearing was held in Raleigh, North Carolina before the undersigned. As set forth below, based on the evidence presented at the hearing, the Court finds that the Defendant, Donald Marlowe Jeffers, presently lacks the mental capacity to proceed in this action. In light of the evidence received at the hearing, the Court respectfully recommends a review of Defendant's conditions of release, as ordered on April 30, 2010 by the Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

I. BACKGROUND

On June 7, 2001, a federal Grand Jury in this district returned a one-count Indictment that charged the Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). As an alleged Armed Career Criminal, the Defendant faces a sentence of not less than 15 years nor more than life imprisonment if convicted on this charge.

On July 19, 2001, the Defendant filed a motion to determine his present mental condition. This Court granted the Defendant's motion and ordered that the Defendant be examined for competency at the time of the offense and to determine his present mental condition. This Court

---

[1]The companion case arising under 18 U.S.C. § 4246 and pending in the Western District of Missouri is *United States v. Jeffers*, No. 05-3224-CV-S-RED (W.D. Mo.).

extended the evaluation period and the case was continued several times for the Defendant's evaluation to be completed.

On April 20, 2004, the Court granted the parties' joint motion to transfer the Defendant to a federal medical center for further psychiatric evaluation. On December 2, 2004, the Defendant filed an insanity defense.

On February 3, 2005, the parties filed a joint motion asking the Court to commit the Defendant to the Custody of the Bureau of Prisons pursuant to 18 U.S.C. § 4246. This motion was filed based on Doctor Elizabeth Weiner's examination of the Defendant and her determination that the Defendant was not competent to stand trial nor was he likely to become competent in the near future. On February 7, 2005, this Court ordered that the Defendant be committed to the custody of the Bureau of Prisons pursuant to 18 U.S.C. § 4246.

The Defendant remained in the custody of the Bureau of Prisons at the Medical Center for Federal Prisoners (MCFP), at Springfield, Missouri until May 2010. From May 25, 2005 until April 30, 2010, the Defendant's civil commitment proceedings were held in United States District Court for the Western District of Missouri.

On May 19, 2010, the Defendant was released on conditions pursuant to the written order of the Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri. The conditions require that the Defendant reside at the BJ Family Care Home in Durham, North Carolina, (a half-way house) and that he be supervised by the United States Probation Office for the Middle District of North Carolina.

Although the Defendant has been conditionally released from his civil commitment under 18 U.S.C. § 4246, he still faces federal firearms charges in this district. A status conference and

competency hearing in the above-referenced matter occurred in Raleigh on March 16, 2011. The findings of that conference are the subject of this Order.

## II. DISCUSSION

The Court must decide whether the Defendant is presently competent to proceed in this criminal matter. "[T]he criminal trial of an incompetent defendant violates due process." *E.g., Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). Competency is so fundamental to the justice system, that the right not to stand trial while incompetent is protected even if the defendant fails to timely request a competency determination. *Pate v. Robinson*, 383 U.S. 375, 384 (1966). Courts examining the competency of a defendant must determine if "[the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960).

Here, the Court finds Defendant has made a sufficient showing that he is not presently competent to proceed to trail. As Defendant's expert Dr. Moira Artigues opined: this is not even a "close case." (Transcript of Hearing of March 16, 2011 at p. 50).

A.  Defendant's Paranoid Schizophrenia

Where a criminal defendant's competency to proceed is in doubt, the first thing a court must determine is whether the Defendant presents with a mental disease or defect. The evidence presented at the March 16, 2011 hearing established that the Defendant does in fact presently suffer from a severe mental disease. Dr. Artigues opined that Mr. Jeffers suffers from paranoid schizophrenia (Tr. p. 44). The doctor confirmed that Mr. Jeffers' mental condition has a "fanatic, overly religious layer" to it. (Tr. p. 46). Dr. Artigues based her opinion on information obtained through personal

3

interactions with Mr. Jeffers. Dr. Artigues also reviewed Defendant's extensive medical records and discussed the Defendant's condition with his treating physicians and with his brother and sister (Tr. p. 43–45).[2]

In support of her paranoid schizophrenia diagnosis, Dr. Artigues cited Mr. Jeffers' abiding belief that "he was conspired against by the government" and that he has been "depressed and oppressed all his life" (Tr. p. 46). Dr. Artigues noted that during her interactions with Mr. Jeffers, he "couldn't stop talking about the conspiracy." When Dr. Artigues pointedly questioned Mr. Jeffers about the pending criminal charges against him, Mr. Jeffers boldly responded: "I don't claim a lawyer, I only claim Jesus." (Tr. p. 46). Doctor Artigues unflinchingly concluded, based on her comprehensive review of the Defendant, his medical history, and his present symptomocology, that Mr. Jeffers presently suffers from the severe mental disease of paranoid schizophrenia.

The Government contended, in opposition, that Mr. Jeffers has the capacity to proceed and that his claims of debilitating mental illness are a sham. The Government contended at the hearing

---

[2]Dr. Artigues met with Defendant for an interview and examination on 12/31/2010 at the Edgecombe County Detention Center in Tarboro, North Carolina. She also reviewed the following: a report of Forensic Evaluation prepared by Dr. Perkins, Psy.D., dated 10/26/10 (Government's expert); copies of medical records from John Umstead Hospital and from the Durham VA Medical Center (VAMC); a copy of a Forensic Report prepared by Elizabeth Weiner, PhD, dated 10/20/04; copies of reports of Forensic Evaluations prepared by Angela Walden-Weaver, PhD, and Robert G. Lucking, MD, dated 12/17/01, 08/21/02, and 02/26/03; a report of Forensic Evaluation prepared by Jean Zula, MD, dated 05/13/03; a copy of a Risk Assessment Review Report prepared by Dwayne Walker, LCSW, AFSW, MSW and Carlos Tomelleri, MD, dated 08/19/09, as part of a Request To Petition the Court for Conditional Release Order, dated 04/19/10, prepared by Randy Brandt, PhD, and John Getchell, LCSW; copies of materials forwarded to the United States Probation Office (USPO) related to the conditional release of Defendant, dated April 6, 2010; and copy of writings prepared by Defendant. Additional information was obtained through telephone contact with Georgina Ashlock, PhD and Elizabeth Weiner, PhD, of the United States Medical Center for Federal Prisoners (MCFP) Springfield; Ken Jeffers, brother of Defendant, and Vivian White, sister of Defendant.

4

that although Mr. Jeffers "presented himself" as irrational and disturbed, "he was observed totally differently when he was in Butner." The Government argued that the alleged inconsistency between Mr. Jeffers' irrational self-presentation and his clandestinely-observed conduct shows that Mr. Jeffers is, in actuality, feigning his illness in order to avoid criminal prosecution.

Supporting the Government's argument, Dr. Perkins testified to, *inter alia*, Mr. Jeffers' (1) good hygiene, (2) his lack of "bizarre, unusual" or "disruptive behaviors," (3) his positive interactions with other inmates, (4) his manipulating of family-members via the telephone, and (5) his "predatory" homosexual behavior (Tr. p. 20). The Government argued that this conduct cuts against a finding of either schizophrenia or of legal incapacity. But there are at least two problems with the Government's argument.

First, none of the conduct cited by the Government is categorically inconsistent with a diagnosis of paranoid schizophrenia or legal incapacity. For instance, the Government argued that Mr. Jeffers' predatory homosexual conduct demonstrates his rational and calculating thought processes. Such calculating thought patterns, the Government contended, are utterly uncharacteristic of a true paranoid schizophrenic. Rebutting the Government's argument, however, Dr. Artigues pointed out that Mr. Jeffers believes "there is a dead aunt who lives inside of him who likes men, and that is the person who is actually doing the sex acts." The doctor elaborated that in her opinion, Mr. Jeffers has a "delusional belief that there's a woman inside of him as a way of making his own homosexual urges acceptable to him . . . ." (Tr. p. 49). Dr. Artigues' testimony, which the Court finds to be credible and entitled to great weight, demonstrated that Mr. Jeffers' seemingly informed and deliberate conduct is in fact entirely consistent with an individual plagued by severe mental illness. Contrary to Dr. Perkins' testimony, Defendant's homosexual predatory conduct is not necessarily

5

indicative of any rational or calculated thought patterns. Viewed in the proper context, that conduct is entirely consistent with—and even bolsters—a diagnosis of schizophrenia.

When pressed by the Government, Dr. Artigues did not waver in either her diagnosis or in her opinion of the severity of Defendant's condition. She held steadfast to her opinion that the Government's cited behavior did not undermine her conclusions. The doctor's explanation of how Defendant's conduct is consistent with a finding of mental illness has persuaded this Court. Generalizing the essential principle of Dr. Artigues' testimony to the other conduct cited by the Government, the Court finds that none of that conduct is—either alone or in combination— sufficient to undermine a finding that Mr. Jeffers is a paranoid schizophrenic and that he lacks the capacity to proceed.

There is a second reason why the Government's malingering argument is meritless. It is simply inconceivable that Mr. Jeffers has feigned a life-altering psychiatric disease for as long as the Government contends. Dr. Artigues emphatically addressed this point:

> I don't think anyone could malinger what he was exhibiting in the interview, and I've never seen anyone malinger for ten years, Judge Boyle. That would be a new record, and he would deserve an Emmy for that performance. Not only that, but he gets all the symptoms right. So, I just couldn't see how he could possibly be malingering. That's astonishing to me.

(Tr. p. 57). The Court agrees with Dr. Artigues and finds that the Defendant is not malingering. As Dr. Artigues concluded, the Court finds that Mr. Jeffers actually presents with paranoid schizophrenia.

The Government offered the testimony of Dr. Rebecca Perkins. As the Court has mentioned, Dr. Perkins generally opined that Mr. Jeffers is malingering. The Court finds that in this case, Dr. Perkins's testimony is not entitled to great weight. As an initial matter, the Court notes that Dr.

6

Perkins based her conclusions on a far narrower range of data points than Dr. Artigues did. Dr. Perkins was not able to conduct any psychological testing on the Defendant (Tr. p. 18–19), nor was she able to complete a personal history of the Defendant (Tr. p. 18). Instead, Dr. Perkins formed her professional opinions using two-months of "periodic" observations of the Defendant's daily living activities at FCI Butner (Tr. p. 19–20). These observations, although helpful, appear to be sporadic at best.

Dr. Artigues, on the other hand, conducted a far more comprehensive medical review and analysis of the Defendant. Although Dr. Artigues did not conduct any psychometric testing herself, she nevertheless observed and interacted with Mr. Jeffers in a clinical setting and synthesized her personal observations with the Defendant's past evaluations and medical history (Tr. p. 44). In light her more extensive review,[3] the Court gives greater weight to Dr. Artigues' opinion.

The Court also gives greater weight to Dr. Artigues' opinion in light of her demonstrated record of experience with patients in this particular field. In this battle of the experts, Dr. Perkins proved herself to be a competent professional. But Dr. Perkins did not begin her duties as a forensic psychologist at FCI Butner until January of 2009 (Tr. p. 15). Dr. Artigues, on the other hand, is board-certified in psychiatry and has been licensed as a medical doctor in this state since 1996 (Tr. p. 51). She has made diagnoses of this type in "hundreds or thousands of cases" (Tr. p. 50). Without casting aspersions on Dr. Perkins and recognizing that competent professionals often differ on difficult issues like these, the Court finds that Dr. Artigues' opinion is entitled to greater weight.

In sum, after weighing all of the evidence presented at the March 16, 2011 hearing, the Court finds that Mr. Jeffers presents with the mental disease of paranoid schizophrenia.

---

[3] *See supra* note 2.

B.  The Effects of Defendant's Mental Disease

Having concluded that Mr. Jeffers presently suffers from a mental disease, the Court must address whether that condition renders him incapable of proceeding to trial. The Court believes that it does.

Here, Dr. Artigues expressed a firm belief that Mr. Jeffers lacks the present ability to either rationally consult with his lawyer or to comprehend the nature of the criminal proceedings he faces. The doctor informed the Court that Mr. Jeffers:

> [i]s completely irrational about the criminal process. He's been telling Mr. Craven [his lawyer] for ten years that these charges are as a result of a conspiracy, and, in fact, he spins everything that happens as part of the conspiracy . . . . So, he's quite paranoid about all the proceedings involved here.

(Tr. p. 47). Dr. Artigues' opinion is supported by Defendant's ardent declaration: "I don't claim a lawyer, I only claim Jesus." (Tr. p. 46).

Furthermore, the Court notes that Mr. Jeffers' correspondence with the Court demonstrate his inability grasp the implications of legal process he faces. The Defendant's utterly bizarre *pro se* filings, which have been, at times, prolific, include cryptic cut-out depictions of the undersigned along with zany spreadsheets and diagrams. Some of the Defendant's filings have given this Court such cause for concern that it has referred them to the proper authorities for a threat analysis. Unless Mr. Jeffers is "a high risk taker . . . sending [such cryptic filings] to [his] trial judge is not a sign of great clarity . . ." (Tr. p. 39). It is, however, a sign of how Mr. Jeffers' schizophrenia renders him incapable of martialing any defense.

Given Mr. Jeffers' bizarre and paranoid behavior, the Court finds that it would be virtually impossible for Mr. Jeffers' lawyer to mount any sort of competent defense on Mr. Jeffers' behalf.

Under these circumstances, requiring an individual as infirm as Ms. Jeffers to defend against these serious charges would surely run afoul of the Constitution's due process guarantees.

In sum then, the Court finds that the Defendant has sufficiently shown that he is presently suffering from a mental disease or defect that renders him unable to proceed. The Court specifically finds that as a result of his paranoid schizophrenia, the Defendant is unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense.

C.    Mr. Jeffers' Conditional Release Under 18 U.S.C. § 4246

Mr. Jeffers is concurrently under the jurisdiction of the United States District Court for the Western District of Missouri in an ancillary civil proceeding pursuant to 18 U.S.C. § 4246. *United States v. Jeffers*, No. 6:05-CV-3224 (W.D. Mo.). On April 30, 2010, United States District Judge Richard E. Dorr granted the Government's motion to conditionally release the Defendant to a group home facility in Durham, North Carolina under the supervision of the Probation Office for the Middle District of North Carolina. The conditional release in the Missouri case is indefinite, and may be for life.

Based on the evidence presented at the March 16, 2011 hearing, this Court has grave concerns regarding the potential threat Defendant poses to himself and to others. The testimony of Dr. Perkins and Dr. Artigues supports a finding of Defendant's present dangerousness. Defendant's criminal history spans at least three decades and includes several convictions for violent offenses–convictions that form the basis for charging him in this action as an Armed Career Criminal. Defendant is, moreover, plagued by chronic substance-abuse, he is of low socioeconomic status, and his mental condition requires continuous treatment, observation, and medication. Absent sufficient custodial safeguards, the Defendant's own expert conceded that Defendant "has a poor

track record" (Tr. p. 52). In short, Defendant has many "risk factors for dangerousness" (Tr. p. 52).

Given Defendant's assorted risk factors for dangerousness, the Court believes that this Defendant's conditions of release deserve special judicial attention, and that Judge Dorr is entitled to the benefit of the evidence received at the March 16 hearing. Without calling into question the sufficiency or propriety of Judge Dorr's conditional release order, and merely in an abundance of caution and in the interests of justice, this Court recommends a review of Defendant's conditions of release in light of the evidence of dangerousness presented at the March 16, 2011 hearing.

## III. CONCLUSION

In light of the foregoing, the Court finds that the Defendant lacks the capacity to proceed in this matter. Defendant presently suffers from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense.

In light of the evidence presented at the March 16, 2011 hearing, the Court respectfully recommends a review of Defendant's conditions of release in the ancillary proceeding arising under 18 U.S.C. § 4246 before the Honorable Richard E. Dorr in the Western District of Missouri. The Clerk is DIRECTED to send a certified copy of this Order to the Clerk of Court for the Western District of Missouri along with a certified copy of the transcript of the hearing of March 16, 2011.

In light of the Court's present holding, the Government is DIRECTED to file a motion identifying the appropriate party who shall assume immediate custody and control over the Defendant. The Government shall file their motion within ten (10) days from the filing of this Order. The Defendant shall have ten (10) days from the filing of the Government's motion to file his

opposition, should he so desire. A written order will then issue from this Court in due course.

DONE AND ORDERED in chambers, this 26 day of April, 2011.

*[signature]*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE